UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
GENETTE COLON and ELVIMAR RIVAS,          :
                                          :
        Plaintiffs,                :
                                          :   **12cv7405 (HB)**
        - against -                :
                                          :   <u>**OPINION & ORDER**</u>
FASHION INSTITUTE OF TECHNOLOGY           :
(STATE UNIVERSITY OF NEW YORK),           :
LAURA SOLOMON, in her corporate capacity  :
As FIT's AVP for Human Resources and Labor:
Relations, COLETTE WONG, in her corporate :
capacity as chair of FIT's Fashion Design Dept. :
and in her individual capacity, LINDA     :
MUGLIA, in her corporate capacity as      :
Supervisor of FIT's Fabric/Finding Room and in :
her individual capacity, and CARMELA      :
SPERANZA, in her corporate capacity as    :
Administrative Associate at FIT and in her :
individual capacity,                      :
                                          :
        Defendants.                :
------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:[1]**

       The motions catalogued below are all brought by the Defendants and all seek summary judgment. Plaintiffs Genette Colon and Elvimar Rivas bring racial and pregnancy discrimination claims, as well as retaliation claims, against their former employer, the Fashion Institute of Technology ("FIT"). Colon brings claims for interference and retaliation in violation of the Family Medical Leave Act ("FMLA"), and discriminatory treatment and retaliation under 42 U.S.C. § 1981. Colon also brings claims against Defendants Laura Solomon, Linda Muglia, and Carmela Speranza for retaliation under 42 U.S.C. § 1981. Rivas brings claims for discrimination on the basis of pregnancy, discriminatory discharge and hostile work environment under the New York City Human Rights Law ("NYCHRL"). Rivas also brings a claim for hostile work environment under 42 U.S.C. § 1981, and claims against Defendants Colette Wong and Carmela Speranza under the NYCHRL and 42 U.S.C. § 1981. For the reasons stated below, Defendants' motion is GRANTED in part and DENIED in part.

---

[1] Kaitlin Wood, a third-year law student at Fordham Law School and a Fall 2013 intern in my Chambers, provided substantial assistance in researching and drafting this opinion.

1

# BACKGROUND

### A. Plaintiff Genette Colon

Plaintiff Genette Colon is a Hispanic woman. She was hired by Defendant FIT as a student aide in 1997 to work in the fabric lab in the Fashion Design Department. (Defs.' 56.1 ¶ 1.) In 1999, Colon was promoted to a position as a part-time employee in the fabric room. (*Id.* at ¶¶ 2, 3.) In 2002, Colon was promoted to a full time position, and in 2005, she was granted tenure at FIT. (*Id.* at ¶¶ 4, 5.) Colon alleges that on one occasion in 2008 Defendant Linda Muglia ("Muglia"), the Supervisor of FIT's Fabric/Finding Room, referred to her as a "spic" while she criticized her work. (Defs.' 56.1 ¶ 38; Colon Dep. 127-28.) Colon complained to her union representative Maria Zervos about the comment. (Defs.' 56.1 ¶ 39; Colon Dep. 165.)

On August 18, 2008, August 22, 2008, September 9, 2008, December 1, 2009, March 4, 2010 and May 16, 2011 Colon received memoranda from Defendant Colette Wong ("Wong"), Chair of the Fashion Design Department, addressing Colon's unacceptable tardiness, absences and misuse of sick days. (Pogrebin Dec. Exs. F, G, H, I, J, K.)  During May 2011, Colon was denied a request for three vacation days, though she was granted the other vacation she requested that summer. (Pogebrin Dec. Ex. T; Defs.' 56.1 ¶¶ 40, 41; Colon Dep. 137-38.)

On August 22, 2011, Wong sent an email to members of the FIT Human Resources Department ("HR") requesting that charges be brought against Colon and another employee, Angelo Totenda ("Totenda"). (Wong Dec. ¶ 5, Ex. A; Defs.' 56.1 ¶ 53, 54, 55.) Defendant Solomon ("Solomon"), the Assistant Vice President for Human Resources and Labor Relations at FIT, testified that she began processing this request on August 25. (Solomon Dec. ¶ 4.) During October 2011, Colon tore the ACL in her left knee. (Colon. Aff. ¶¶ 39, 40, Ex. 12.) Colon received two notes from a chiropractor about her condition, dated October 18 and October 20, both of which she gave to her supervisors. (*Id.*) Also during October, and after receiving these notes, Muglia took away Colon's keys, which made it more difficult for Colon to use the restroom. (Colon Aff. ¶ 42.) On another occasion, Muglia insisted Colon look for a mannequin for a student, despite her knee injury. (*Id.*)Colon informed her union representative of this treatment. (*Id.* at ¶ 43.)

On November 1, 2011, Colon picked up paperwork from HR to apply for FMLA leave for her knee surgery. (*Id.* at ¶44.) At some point between that date and November 7, Colon informed Johanny Taveras, an HR employee, about Muglia's taking the restroom keys and her

2

insistence that she get the mannequin. (*Id.*) On November 3, 2011, Colon's surgeon faxed the required FLMA leave forms to FIT, indicating that Colon would need leave for surgery and recovery from November 30, 2011 to January 10, 2012. (Colon Aff. Ex. 13.)  On November 7, 2011, FIT preferred disciplinary charges against Colon and suspended her employment. (Solomon Dec. ¶ 5; Colon Aff. Ex. 16.) On November 8, 2011, Colon complained of discrimination to Griselda Gonzalez, FIT's affirmative action officer, stating that she had been discriminated against because she had requested FMLA leave.  (Defs.' 56.1 ¶ 49; Gonzalez Dec. ¶ 3.) Gonzalez found that Colon's complaint was unsupported. (Gonzalez Dec. ¶ 4.) After Gonzalez informed Colon of her findings, Colon complained to Gonzalez that she had been treated poorly because of her race. (*Id.* at ¶ 5.)

      Pursuant to the collective bargaining agreement between Colon's union, the United College Employees of FIT, Local 3457 ("Union") and FIT, Colon's disciplinary charges as a tenured employee were referred to a Disciplinary Committee made up of one designee of the FIT administration and one designee from the Union to investigate the charges and make a recommendation to the President of FIT. (Solomon Dec. ¶ 5.) This committee recommended Colon's termination. (*Id.*) On February 1, 2012, Colon was suspended without pay pending a disciplinary hearing, pursuant to the collective bargaining agreement. (*Id.*) An arbitrator conducted disciplinary hearings on September 5, November 14 and December 11, 2012, and subsequently recommended Colon's termination, finding139 instances of lateness and 63 absences in almost five years. (*Id.* at  ¶¶ 7, 8; Pogrebin Dec. Ex. P 11.) During the disciplinary hearings, Colon was represented by counsel, witnesses testified under oath and were cross examined, but Colon complained that she was not able to call certain co-workers to testify. (Defs.' 56.1 ¶ 25; Pls.' 56.1 ¶ 25'; Colon Aff. Ex. 15). On June 5, 2013, the FIT Board of Trustees adopted the arbitrator's recommendation and terminated Colon. (Solomon Dec. ¶ 8.)

### B. Plaintiff Elvimar Rivas

      Plaintiff Elvimar Rivas is a Hispanic woman. In 2007, Defendant FIT hired her as a temporary secretary in the Fashion Design Department. (Defs.' 56.1 ¶ 56).  In 2008, Rivas was promoted to a permanent position, but remained untenured. (Defs.' 56.1 ¶¶ 57, 59).  Throughout Rivas's employment, FIT identified instances of absence and tardiness in Rivas's performance reviews  (Defs.' 56.1 ¶¶ 62, 64, 66, 68, 93; Pogrebin Dec. Exs. V, W, X, Y, BB, CC, DD).

During her time at FIT, Rivas felt that she was criticized for making phone calls and sending text messages during the day. (Defs.' 56.1 ¶ 70.) Rivas also had her pay docked when she was a few minutes late to work, was required to call Speranza, an Administrative Associate in the Fashion Design Department who supervised Colon, to report her arrival time each day for two months in 2009, and had to move her desk to directly face Speranza. (Defs.' 56.1 ¶¶ 79, 82, 83).   In January 2010, Solomon, an HR Vice President, wrote an email advising Speranza to terminate Rivas because of her tardiness. (Defs.' 56.1 ¶ 85; Solomon Dec. ¶ 9.) In March 2010, Solomon sent emails to another member of HR, and to Speranza and Wong, "recommending [Rivas's] termination on the basis of lateness." (Defs.' 56.1 ¶¶ 86, 87; Solomon Dec. ¶¶ 10, 11.)

Rivas informed Wong in writing that she was pregnant on May 4, 2010. (Pls.' 56.1 ¶¶ 89, 164; Rivas Aff. ¶¶ 18, 20, Ex. 3.) Rivas states that she verbally informed Wong of her pregnancy approximately one week before the written notification, and complained that Wong asked whether her boyfriend would be able to take care of her during her pregnancy, and did not congratulate her. (Pls.' 56.1 ¶ 89; Rivas Aff. ¶ 17; Defs.' 56.1 ¶ 92.) Wong emailed an HR employee on May 14 informing him that she planned to terminate Rivas's employment the week of May 24; however, upon consultation with HR, Wong was advised to postpone the termination. (Defs.' 56.1 ¶ 88, 89.) Rivas also alleges that, after she informed Wong of her pregnancy, Speranza and Wong ignored her, did not include her in meetings, no longer kept her "in the loop", and were no "longer . . . able to look [her] in the face." (Defs.' 56.1 ¶¶ 95, 96; Pls.' 56.1 ¶ 172.)

On May 27, 2010, Rivas received a performance evaluation, indicating that her performance was unacceptable in the areas of "Quality," "Quantity," "Judgment," and "Attendance and Punctuality." (Defs.' 56.1 ¶ 93; Pogrebin Dec. Ex. BB). Rivas informed Wong that she did not feel that the May 27 evaluation was accurate, and Wong revised the evaluation on June 14, wherein only "Attendance and Punctuality" remained at the not acceptable level, with several other categories showing "needs improvement." (Pls.' 56.1 ¶¶ 172, 173; Defs.' 56.1 ¶ 94; Rivas Aff. ¶ 24, Exs. 8, 9.)On September 2, 2010, Rivas's employment was terminated. (Defs.' 56.1 ¶ 101; Pls.' 56.1 ¶ 174.)

## DISCUSSION

Summary judgment is appropriate "only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Kuebel v. Black & Decker Inc.*,

4

643 F.3d 352, 358 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a). The Court must "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in that party's favor." *Id.* Nevertheless, "summary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).

### A. Plaintiff Genette Colon
### 1. Collateral Estoppel and Weight Given to Arbitration Decision
#### a. Collateral Estoppel

"The doctrine of collateral estoppel bars relitigation of a legal or factual issue that was previously decided in a prior action. . . ." *Smith v. N.Y. C. Dep't of Educ.*, 808 F. Supp. 2d 569, 577- (S.D.N.Y. 2011). Pursuant to the Collective Bargaining Agreement ("CBA"), FIT has with the Union, FIT disciplines tenured employees in accordance with Section 2587 of the New York State Education Law, which states that "[p]ersons granted tenure under the provisions of this section shall not be removed except for cause, after a hearing and by a majority vote of the board." N.Y. Educ. L. § 2587(9); *id.* After Solomon preferred charges against Colon alleging unsatisfactory attendance, a Disciplinary Committee investigated the charges and recommended Colon's termination. (Pogrebin Dec. Ex. M; Def. 56.1 ¶ 22). Charges against Colon were then heard by an arbitrator who found that FIT "had just cause to seek to terminate the employment of [] Colon . . . . Colon had an unsatisfactory attendance record." (Pogrebin Dec. Ex. P, 20-21). The FIT Board of Trustees adopted the arbitrator's recommendation and terminated Colon.

Courts in this circuit have not held that Section 2587 arbitrations have preclusive effect, nor have they held that litigation is precluded because of arbitrations based on similar statutes.[2] The Second Circuit has held that proceedings pursuant to Section 3020-a of the New York State Education Law have preclusive effect, but that holding relied on the fact that such hearings are administrative adjudications. *Burkybile v. Bd. of Educ. of the Hastings-on-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 311 (2d Cir. 2005). Indeed, the circuit noted that "the preclusive effect of arbitrations is a difficult and complex issue," and that it "need not decide here whether arbitrations have preclusive effect." *Id.* at 310, 311. Because this circuit has not extended

---

[2] As Defendants point out, I have held that labor arbitrations collaterally estop certain claims; however, when I have done so, the relevant claims were, unlike the claims here, state law claims that state courts had held were precluded by labor arbitrations. *See Webb v. Robert Lewis Rosen Assocs.*, 2003 U.S. Dist. 23160 (S.D.N.Y. 2003).

preclusive effect to Section 2587 arbitrations, or arbitrations pursuant to substantially similar statutes, I will not do so in this matter.[3]

### b. Weight Given to Arbitration Decision

" 'The arbitral decision may be admitted as evidence and accorded such weight as the court deems appropriate.' " *Pender v. Dist. Council 37 of Am. Fed'n of State, Cnty. & Mun. Employees*, 223 F. Supp. 2d 534, 541 (S.D.N.Y. 2002)(quoting *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 60 (1974)). The weight accorded to the arbitration should be determined "in the court's discretion with regard to the facts and circumstances of each case." *Gardner-Denver*, 415 U.S. 36, 60 (1974), *see* n. 21 ("Relevant factors include . . . . the degree of procedural fairness in the arbitral forum, adequacy of the record with respect to the issue of discrimination, and the special competence of particular arbitrators.") Although Colon was represented by counsel in the proceeding, and witnesses testified under oath and were subject to cross examination, the Plaintiffs contend that the arbitrator did not consider Defendants' treatment of comparable co-workers in reaching her findings. Specifically, Plaintiff alleges that one co-worker who would have been a comparator was instructed by the Union not to testify in the proceeding, and that the arbitrator did not consider attendance records of comparable employees. Because comparators may be significant in connection with Colon's FMLA and § 1981 claims, and because the arbitrator was not privy to that testimony, the arbitration was incomplete with respect to those claims. Consequently, to give the award great weight would be inappropriate.

### 2. FMLA Interference and Retaliation

"The FMLA affords eligible employees an 'entitlement' to twelve weeks of unpaid leave per year." *Di Giovanna v. Beth Israel Med. Ctr.*, 651 F. Supp. 2d 193, 196 (S.D.N.Y. 2009) (quoting 29 U.S.C. § 2612(a)(1)). Among other reasons to grant an FMLA leave, one is where "a serious health condition [] makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). "The Second Circuit recognizes distinct claims for interference and retaliation under the FMLA." *Benimovich v. Fieldston Operating LLC*, 11 CIV. 780 RA, 2013 WL 1189480 (S.D.N.Y. Mar. 22, 2013) (citing *Di Giovanna* at 198-99 (citing 29 U.S.C. § 2615(a)(1)); 29 C.F.R. § 825. 220(c)); *see also Potenza v. City of N.Y.*, 365 F.3d 165 (2d Cir. 2004).

---

[3] As a result, I need not decide whether Colon's FMLA and § 1981 claims were actually litigated in the arbitration.

6

### a. FMLA Interference

To establish a prima facie case for interference under the FMLA, a plaintiff must establish: " (1) that she is an eligible employee under the FMLA; (2) that defendants constitute an employer under the FMLA; (3) that she was entitled to leave under the FMLA; (4) that she gave notice to defendants of her intention to take leave; and (5) that defendants denied her benefits to which she was entitled by the FMLA." *Esser v. Rainbow Adver. Sales Corp.*, 448 F. Supp. 2d 574, 580 (S.D.N.Y. 2006) (internal quotation marks and citations omitted). "[P]laintiff need only prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her. She can prove this claim, as one might any ordinary statutory claim, by using either direct or circumstantial evidence, or both . . . . No scheme shifting the burden of production back and forth is required." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 175-76 (2d Cir. 2006) (internal citations and quotations omitted).

The first three elements are undisputed; however, the parties disagree as to the fourth, and in particular with the time sequence surrounding Defendants' decision to suspend Colon. Defendant Wong emailed FIT Human Resources to bring charges against Colon and Totenda on August 22, 2011. It was not until October, that Colon suffered the knee injury, about which she informed Wong and Muglia later that month. She did so both verbally and with two October notes from her chiropractor. On November 3, her surgeon sent the required forms to FIT for leave from November 30, 2011 to January 10, 2012. On November 7, Colon was informed that she was being suspended and that charges had been brought against her.

Defendants argue that the decision to terminate Colon was made on August 22, when Wong emailed HR. However, Plaintiffs observe that Totenda, the other employee against whom Wong pressed charges for the same kind of concerns in that email, was not terminated, and that the August 22 email only called for charges, and not for any specific disciplinary outcome. The gap between August and November is unaccounted for, and while "[a]n employer is not liable for 'interfering' with an employee's leave when the employee would have been terminated regardless of the leave." *See Pearson v. Unification Theological Seminary,* 785 F.Supp.2d 141, 162 (S.D.N.Y.2011) (citing *Sista,* 445 F.3d at 175–77),here it is impossible for me to evaluate whether Colon's leave notice to Defendants was a factor in FIT's decision to suspend and terminate. As such, whether Defendants impermissibly interfered with Colon's entitlement to

7

FMLA leave is better left to a jury. Accordingly, Defendants motion for summary judgment on Colon's FMLA interference claim is denied.

### b. FMLA Retaliation

Unlike the interference claim, an FMLA retaliation claim is analyzed under the *McDonnell Douglas* burden shifting framework, requiring the Plaintiff first to establish a prima facie case. *See Potenza*, 365 F.3d at 168. Once that showing is made, "the burden of production then shifts to the employer to 'articulate a legitimate, clear, specific and non-discriminatory reason' for its actions." *Esser*, 448 F. Supp. 2d at 581 (quoting *Quaratino v. Tiffany & Co.,* 71 F.3d 58, 64 (2d Cir.1995). "The employer's burden is 'merely one of production, not persuasion; it can involve no credibility assessment.' " *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142.)  "If the employer satisfies that burden, the presumption of discrimination drops out and the plaintiff has the burden to establish by a preponderance of the evidence that the employer's stated reason was merely a pretext for discrimination." *Id. (*citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515(1993).  "In order to make out a prima facie case, [the Plaintiff] must establish that: 1) he exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Potenza*, 365 F.3d 168.

Although the first two elements are undisputed, the parties do not agree about which actions may be considered adverse employment actions. Colon complains of Muglia taking away her keys and asking her to find a mannequin for a student, but these actions do not rise to the level of adverse employment actions. *See Lovejoy-Wilson v. NOCO Motor Fuel, Inc.,* 263 F.3d 208, 223 (2d Cir. 2001). Accordingly, only Colon's suspension constitutes an adverse employment action for the purpose of her FMLA retaliation claim.

With respect to the fourth element, Defendants argue that Colon has not demonstrated retaliatory intent.  However, as discussed above with regard to the FMLA interference claim, the facts may give rise to an inference of retaliatory intent because of the timing of Colon's notice to Defendants of her intention to take FMLA leave, followed very shortly by her suspension. "Proof of the causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeon*s, 842 F.2d 590, 593 (2d Cir. 1988). While it is true that "[w]here timing is

the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise," *Slattery v. Swiss Reinsurance Am. Corp.,* 248 F.3d 87, 95 (2d Cir. 2001), here Colon has also noted other instances of mistreatment after informing Defendants of her intent to take leave. Plaintiff has, albeit barely, overcome the low hurdle required to make out a prima facie case. Defendants offer Colon's documented history of tardiness and absence as their legitimate, non-discriminatory reason for her termination. Colon now must show that this reason is a pretext. The close time proximity of notice to Defendants of her intention to take FMLA leave and Defendants issuing the charges that would lead to her termination on November 7, coupled with Muglia's failure to accommodate Colon's injury, are sufficient to "permit a rational factfinder to infer that the discharge was actually motivated, in whole or in part by discrimination." *Esser v. Rainbow Adver. Sales Corp.,* 448 F. Supp. 2d 574, 581 (S.D.N.Y. 2006) (citing *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 561 (2d Cir. 1997)). Indeed, Colon does not need to show that "the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors." *Id.* (quoting *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995) (internal quotations and citations omitted)). Although Defendants do provide evidence that attendance and tardiness were motivating factors in Colon's suspension, Colon's notice to Defendants that she intended to take leave may have been an additional factor that Defendants considered. Because there is a material issue of fact with respect to whether Defendants were in part motivated by their knowledge of Colon's intention to take FMLA leave, summary judgment must be denied on Colon's FMLA retaliation claim.

### 3. §1981 Discriminatory Treatment and Retaliation
#### a. *§ 1981 Discriminatory and Disparate Treatment*

I turn next to Colon's claims for discriminatory and disparate treatment under § 1981. As with Colon's FMLA retaliation claim, the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), governs her claims for discriminatory and disparate treatment under § 1981. *See Flynn v. N. Y. State Div. of Parole*, 620 F. Supp. 2d 463, 488 (S.D.N.Y. 2009); *see also Martin v. Citibank, N.A.*, 762 F.2d 212, 216-17 (2d Cir. 1985).

To establish the prima facie case, Colon must establish "(1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) that the

adverse employment action occurred under circumstances giving rise to an inference of discrimination." *Rodriguez v. City of New York*, 644 F. Supp. 2d 168, 183 (E.D.N.Y. 2008), (citing *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 567 (2d Cir.2000). Although the Plaintiff's burden is "de minimus," a prima facie case must be established in order for the matter to proceed.  *Williams v. R.H. Donnelley, Corp*., 368 F.3d 123, 126 (2d Cir. 2004).

Here, Plaintiff has met her burden with respect to the first element. Despite Defendants' dissatisfaction, Plaintiff worked for FIT for nine years in this position.  Although attendance and lateness were identified as problem areas in her reviews, she  meets the minimum requirements to show her qualifications at this stage. However, Colon fails to satisfy each of the remaining elements.  The only remaining potential adverse actions are Muglia's taking  her bathroom keys, Muglia's insistence that she get a mannequin on one occasion, and Muglia's and Wong's "talk[ing] down" to her. None of these actions qualify as adverse employment actions, which must be "more than trivial, insubstantial, or petty," *Williams v. Regus Mgmt. Grp., LLC*, 836 F. Supp. 2d 159, 173 (S.D.N.Y. 2011). Colon's allegations do not rise above this level.

Colon also fails to establish that the circumstances of her employment give rise to an inference of discrimination. Although Muglia's use of the word "spic" in 2008 may show a discriminatory state of mind, it was three years earlier and the requisite state of mind had long since vanished. *See Tomassi v. Insignia Fin. Grp., Inc*., 478 F.3d 111, 115 (2d Cir. 2007) ("the more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination. . . .") Colon also attempts to demonstrate that non-Hispanic employees were treated preferentially to create an inference of discrimination. However, the co-workers with whom she compares herself were not similarly situated, and therefore were not adequate comparators to show disparate treatment. *See Bush v. Fordham Univ.*, 452 F. Supp. 2d 394, 410 (S.D.N.Y. 2006) (to show disparate treatment, "the individuals with whom [plaintiff] attempts to compare herself must be 'similarly situated in all material respects'" (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). Colon compares her treatment to that of Stephanie Jones, a white co-worker, who Colon alleges was permitted to take vacation days on short notice, while Colon was not. However, Jones was part-time and untenured, and accordingly not similarly situated to Colon. (Pls.' 56.1 ¶ 127). *See Jenkins v. N.Y.C. Transit Auth.*, 201 Fed. App'x 44, 46 (2d Cir. 2006) (§ 1981 claim fails because "no similarly situated white employee received more favorable treatment"). Colon

alleges that Totenda, a white male co-worker had similar absenteeism and tardiness problems and was not terminated, but she offers no evidence to give credence to this claim. Colon points only to FIT's hiring of a non-Hispanic part-time employee, which it is interesting to note occurred before Colon was suspended. (Defs.' 56.1 ¶ 46.) This employee was part-time, while Colon was full time, besides which the employee did not fill Colon's full-time position.

Because Colon has not established an adverse employment action or circumstances that would give rise to an inference of discrimination, she cannot meet the requirements for a prima facie case of discriminatory or disparate treatment under § 1981. Accordingly, Defendants motion for summary judgment is granted with respect to those claims.

### b.  § 1981 Retaliation

Colon's retaliation claims "are evaluated under a three-step burden-shifting analysis: (1) [plaintiff] must establish a prima facie case of retaliation; (2) defendants must then articulate a non-retaliatory reason for the adverse action; and (3) [plaintiff] must show that retaliation was a substantial reason for the complained-of action." *Benn v. City of N.Y.* , 482 F. App'x 637, 638 (2d Cir. 2012) (internal citations and quotations omitted). To establish a prima facie case, Colon must show that adverse employment action was taken "in response to protected activity." *Id.* Colon must also show evidence that Defendants were aware of the protected activity. *Id.*

Colon fails at the threshold stage because she is unable to show that an adverse employment action was taken in response to protected activity. Colon's protected activity is her November 8 complaint to HR. However, this complaint was made *after* charges were issued on November 7.  Following the charges, FIT went through the procedure set out in the Collective Bargaining Agreement. (Defs.' 56.1 ¶¶ 18, 19, 22.) Colon's complaint after this point cannot plausibly suggest retaliation because the formal disciplinary process had already commenced before her complaint was made. *See Slattery*, 248 F.3d at 95 (noting that "gradual adverse job actions . . . [beginning] well before the plaintiff had ever engaged in any protected activity" undercut an inference of causation).  And indeed, "[e]mployers need not suspend previously planned [actions]" once a plaintiff has engaged in protected activity. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001).

Because Colon has failed to demonstrate that any adverse actions were taken in response to her protected activity, she cannot establish a prima facie case of retaliation under § 1981. Accordingly, summary judgment must be granted for Defendants on those claims.

**B. Plaintiff Elvimar Rivas**

**1. NYCHRL Pregnancy Discrimination and Discharge**

Rivas's claim for pregnancy discrimination under the New York City Human Rights Law is analyzed under the *McDonnell Douglas* burden-shifting framework.[4] *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 357 (S.D.N.Y. 2012). In order to establish a prima facie case of pregnancy discrimination, Plaintiff must show that "(1) she is a member of a protected class; (2) she satisfactorily performed the duties required by the position; (3) she was discharged; and (4) her position remained open and was ultimately filled by a non-pregnant employee." *Lambert v. McCann Erickson*, 543 F. Supp. 2d 265, 277 (S.D.N.Y. 2008) (citing *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 401 (2d Cir. 1998). Plaintiff may also establish the fourth element by "demonstrating that the discharge occurred in circumstances giving rise to an inference of unlawful discrimination." *Id.* Once again, Plaintiff's burden to establish a prima facie case is de minimus. *Id.*

If Rivas establishes a prima facie case of pregnancy discrimination, the burden shifts to Defendants to articulate a legitimate, non-discriminatory reason for Rivas's discharge. *Id.* at 278. Plaintiff must then show that the real reason for her termination was her pregnancy. *Malena*, 886 F. Supp. 2d at 358. "To avoid summary judgment in an employment discrimination case, the plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors." *Id.* (quoting *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008).

In its recent decision in *Mihalik*, the Second Circuit held that "courts must analyze NYCHRL claims separately and independently from any federal and state law claims . . . construing the NYCHRL's provisions 'broadly in favor of discrimination plaintiffs, to the extent

---

[4] Plaintiffs suggest the Court discard the *McDonnell Douglas* framework in light of the Second Circuit's recent decision in *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102 (2d Cir. 2013). However, in noting that it was unclear whether and to what extent *McDonnell Douglas* continues to apply to NYCHRL claims, the court stated, "It is not necessary to resolve this issue . . . the question is also less important because NYCHRL simplified the discrimination inquiry: the plaintiff need only show that her employer treated her less well, at least in part for a discriminatory reason. The employer may present evidence of its legitimate, non-discriminatory motives to show the conduct was not caused by discrimination, but it is entitled to summary judgment on this basis only if the record establishes as a matter of law that 'discrimination play[ed] *no* role' in its actions." *Id.* at 110 n.8 (quoting *Williams v. N.Y.C. Hous. Auth.* 61 A.D. 3d 62, 872 N.Y.S.2d 27, 38, 40 n.27 (1st Dep't 2009). Here, that instruction guides the use of the *McDonnell Douglas* framework.

that such a construction is reasonably possible.'" 715 F.3d at 109 (quoting *Albunio v. City of N.Y.*, 16 N.Y.3d 472, 477-78, 922 N.Y.S.2d 244, 947 N.E.2d 135 (2011).

The first three elements of the prima facie case are undisputed. Rivas asserts that the circumstances surrounding her discharge give rise to an inference of unlawful discrimination because her employment was terminated shortly after she informed FIT of her pregnancy. *See Forde v. Beth Israel Med. Ctr.*, 546 F. Supp. 2d 142, 152 (S.D.N.Y. 2008)("timing may be sufficient to establish an inference of discrimination.") In response, Defendants have provided a legitimate, non-discriminatory reason for Rivas's termination in her documented history of unacceptable tardiness and absence.

Rivas argues that these reasons were pretext for her termination because of the close temporal proximity between informing FIT of her pregnancy and her termination. Rivas, a non-tenured FIT employee, informed Wong of her pregnancy in writing on May 4, 2010, and had given verbal notice to Wong about a week before. On May 14, Wong informed HR that she planned to terminate Rivas the week of May 24. (Wong Dec. Ex. B). Although the timing of Rivas's termination *alone* may be insufficient to demonstrate pretext, *see Forde* 546 F. Supp. 2d at 152, here, Rivas offers more than temporal proximity to demonstrate that Defendants' reasons for her termination were pretextual. Rivas also observed that her performance evaluations subsequent to informing FIT of her pregnancy were significantly worse than any she had received before that, and that Speranza and Wong treated her differently after they learned she was pregnant. (Pls.' 56.1 ¶¶ 168-73, 175; Rivas Aff. Exs. 6-7, 10-11). Although Solomon may have called for Rivas's termination in early 2010, there is a material question of fact about why Defendants chose to terminate Plaintiff when they did, in such close proximity to learning that she was pregnant. During May 2010, Rivas informed Defendants that she was pregnant, and Wong decided the time was ripe to terminate Rivas, but HR advised her to wait. At the end of May, Wong gave Rivas a performance evaluation which was significantly more negative than any previous evaluation Rivas had received. Indeed, Wong revised the evaluation when Rivas objected to it. However, a jury might find that this apparently inaccurate negative evaluation was merely a pretext for termination because of her pregnancy.

Further and notwithstanding that the decision to terminate Rivas's employment was made well before her pregnancy, a jury could find that knowledge of Rivas's pregnancy was a "motivating factor" in Defendant's termination decision because of the temporal proximity

13

between notice and termination, and the negative change in her performance evaluations following notice that she was pregnant. *See Lambert v. McCann Erickson*, 543 F. Supp. 2d 265, 278-79 (S.D.N.Y. 2008)(citing *Holtz v. Rockefeller & Co.,* 258 F.3d 62, 78 (2d Cir.2001)("[T]o defeat summary judgment, the plaintiff need only show that the 'prohibited factor' was at least [one] of the motivating factors.") Particularly in light of the lower hurdle that the NYCHRL requires of plaintiffs, a jury could conclude Rivas's pregnancy played a role in Defendant's decision. *See id.* Accordingly, there are material issues of fact regarding Rivas's NYCHRL claims of pregnancy discrimination and discharge, and summary judgment on these claims must be denied.

### 2. § 1981 and NYCHRL Hostile Work Environment

To prevail on a § 1981 hostile work environment claim, Rivas must demonstrate "(1) that she was subjected to conduct that was objectively severe or pervasive to alter the conditions of [her] employment and create an abusive working environment; (2) that she subjectively perceived the environment to be hostile or abusive; and (3) that the offending conduct created an abusive environment because of [her] race or gender." *Murdaugh v. City of N.Y.*, No. 10 Civ. 7218 (HB), 2011 WL 4001011, at *1 (S.D.N.Y. 2011) (internal quotation marks omitted)(citing to *Patane v. Clark*, 508 F.3d 106, 113-14 (2d Cir. 2007).

Claims under the NYCHRL, on the other hand, do not use the "severe and pervasive" standard, instead requiring the plaintiff to show only that she was treated "less well" because of discriminatory intent. *Mihalik*, 715 F.3d at 110. Further, "[if the plaintiff establishes that she was treated less well because of her gender, defendants may assert 'an affirmative defense whereby [they] can still avoid liability if they prove that the conduct complained of consists of nothing more than what a reasonable victim of discrimination would consider petty slights and trivial inconveniences.'" *Id.* at 111 (internal quotation marks omitted).

Rivas alleges that she was subject to intense scrutiny and micro-management on a daily basis, including having her desk moved to face Speranza. (Pls.' 56.1 ¶¶ 179-80). Further, she was required to call Speranza when she arrived at work each day. *(Id.* at ¶ 182). Speranza also reprimanded Rivas for using her cell phone to place calls or texts, while Rivas observed Speranza, and another employee, Nina Blumenthal, both of whom are white, use their cell phones to make calls and texts. (*Id.* at ¶¶ 177-78). Finally, Rivas was docked time for arriving to work late. (Defs.' 56.1 ¶¶ 79, 82, 83.)

However, these actions are not sufficient to sustain a hostile work environment claim under §1981 or the NYCHRL. Moreover, Rivas does not dispute that she has arrived late to work, and her performance evaluations demonstrate that she struggled with this aspect of her employment from the get go. (Def. 56.1 ¶¶ 60, 71; Rivas Aff. Exs. 6-7, 10-11). Thus, it is hard to conclude that the actions Rivas complains of amount to unfair scrutiny by Speranza, rather than a consequence of Rivas's work and attendance problems that needed improvement. *See Leung v. N.Y. Univ.*, No. 08CV5150 (GBD), 2010 WL 1372541, at *7 (S.D.N.Y. Mar. 29, 2010) (holding that "unfair scrutiny" was not "sufficiently severe to result in a finding that an objectively hostile or abusive work environment existed") (internal quotation marks omitted).

Speranza may have been an "overbearing or obnoxious boss," but even under the more lenient NYCHRL standard, these actions do not rise above the level of "petty slights and trivial inconveniences." *Mihalik*, 715 F.3d at 110-11. Accordingly, Defendants' summary judgment motion as to Rivas's hostile work environment claims is granted.

## CONCLUSION

I have considered the parties remaining arguments and find them meritless.[5] For the reasons stated above, Defendants' motion for summary judgment is GRANTED as to Colon's § 1981 discriminatory treatment and retaliation claims, and Rivas's § 1981 and NYCHRL hostile work environment claims. Defendants' motion is DENIED as to Colon's FMLA interference and retaliation claims, and Rivas's NYCHRL pregnancy discrimination and retaliation claims. The Clerk of the Court is instructed to close this motion.

**SO ORDERED**
October 18 2013
New York, New York

Hon. Harold Baer, Jr.
U.S.D.J.

---

[5] Neither side adequately briefed the issue of liability with respect to those defendants sued in their individual capacities. It would be helpful to have your thoughts on this score, if any, before trial.

15